**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| INSTITUTE FOR ENERGY RESEARCH, | |
| Plaintiff, | Civil Action No. 22-2114 (BAH) |
| v. | Judge Beryl A. Howell |
| FEDERAL ENERGY REGULATORY COMMISSION, | |
| Defendant. | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Institute for Energy Research challenges the Federal Energy Regulatory Commission's ("FERC") withholding, in response to plaintiff's request, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, of calendars for two FERC Commissioners during an approximately 18-month period, from November or December 2020 through April 19, 2022. FERC withheld certain calendar entries under FOIA Exemption 5 and 6, *id.* §§ 552(b)(5), (b)(6), asserting that the redacted calendar entries are subject to the deliberative process privilege and otherwise contain sensitive personal information implicating significant privacy interests that outweigh any public interest in disclosure.

The parties have now cross-moved for summary judgment. Pl.'s Mot. Summ. J. ("Pl.'s Mot."), ECF No. 11; *see also* Pl.'s Mem. Supp. Mot. Summ. J. ("Pl.'s Mem."), ECF No. 11-1; Def.'s Cross-Mot. Summ. J., ECF No. 15 ("Def.'s Cross-Mot."); *see also* Def.'s Cross-Mem. Supp. Mot. Summ. J, ECF No. 15-1 ("Def.'s Cross-Mem."). For the reasons set forth below, summary judgment is granted in part and denied in part, without prejudice, to FERC and denied, in part without prejudice, to plaintiff.

1

I.      **BACKGROUND**

Summarized below is the background relevant to resolving the pending motions and the procedural history of this lawsuit.

   **A.  Plaintiff's FOIA Request**

FERC is an independent federal agency that, under the direction of Chairman Richard Glick, regulates the interstate transmission of electricity, natural gas, and oil.  Def.'s Cross-Mot., Declaration of Sarah Venuto, Dir. of FERC's Office of External Affairs ("OEA") ("OEA Decl.") ¶ 2, ECF No. 15-3.  On April 19, 2022, plaintiff submitted to FERC a FOIA request seeking copies of all calendars: "(1) kept by FERC Commissioner and Chairman Richard Glick, for the period November 8, 2020 through April 19, 2022; (2) kept for FERC Commissioner and Chairman Richard Glick, by his Chief of Staff Pamela Quinlan, for the period November 8, 2020 through April 19, 2022; (3) kept by Commissioner Allison Clements, for the period December 8, 2020 through April 19, 2022; and (4) kept for FERC Commissioner Allison Clements, by her assistant Alexander de Taboada, for the period December 8, 2020, through April 19, 2022." *Id.* ¶ 7 (citation omitted).

Plaintiff initiated this request "for calendars in light of Chairman Glick's testimony before the United States Senate Committee on Energy & Natural Resources on March 3, 2022, specifically his testimony about FERC's controversial guidances [sic] and policy statements known as 'Policies to Guide Natural Gas Project Certifications pertaining to greenhouse gas (GHG) emissions.'"  Pl.'s Mem. at 2.  In plaintiff's recounting, at the March 2022 hearing, Glick responded to "the direct question, 'has anyone higher up in the [Biden] administration ever spoken to you in regards to somehow slow-walking or otherwise impeding or otherwise accentuating policy that would have the effect of impeding the development of natural gas pipelines?' . . . with an unambiguous no."  *Id.* (alteration in original).  Skeptical of the verity of Chairman Glick's

response, plaintiff "believed the public interest would be well served by requesting Mr. Glick's and Commissioner Clements' calendars." *Id.* at 3.

Upon receipt of the FOIA request at issue, FERC sent plaintiff acknowledgment of the same, OEA Decl. ¶ 8, and then OEA staff searched the offices of both Commissioners Glick and Clements ("the Commissioners"), *id.*, and FERC's Information Technology ("IT") staff searched FERC's records "to produce responsive calendars available in Microsoft Outlook for the individuals named in the FOIA request," *id.* ¶ 9. IT staff identified "the calendars for [Glick and Clements] within the specified date ranges." *Id.* While the request sought calendars for the two Commissioners maintained by each Commissioners' chief of staff, the search and production process revealed that "staff within each office have the ability to input information into the [Commissioners' respective] calendars," *id.*, and IT confirmed that the Commissioners "utilize one standard Microsoft Outlook calendar and that no other calendars exist," *id.* Thus, only "two documents were initially located in response to this request." *Id.* Further investigation by FERC's Office of General Counsel "confirmed that only one official calendar is kept for" each Commissioner by reaching out to both Commissioners' offices and thus that no other calendars would be responsive to plaintiff's FOIA request. *Id.* ¶ 16. In sum, although plaintiff's FOIA request encompassed four potential calendars—two for the Commissioners and two maintained for them by their respective chief of staff—only two responsive calendars were located. *Id.*

Less than two months after receipt of plaintiff's FOIA request, on June 2, 2022, FERC produced the calendars with redactions in certain entries, pursuant to FOIA Exemptions 5 and 6. *Id.* ¶ 11.[1] On July 27, 2022, FERC's general counsel produced additional documents to plaintiff:

---

[1]     Given the comparative speed with which FERC produced responsive records to the FOIA request, plaintiff's repeated complaints about delays in response to this and other of its FOIA requests, Pl.'s Mem. at 2–7 (accusing FERC of "serially delaying the public's ability to understand in a timely way FERC's operations"), appear to be hyperbolic. *Cf.* U.S. Department of Justice, Summary of Annual FOIA Reports for Fiscal Year 2022 Office of Information Policy,

"a full calendar for Chairman Glick and six-additional pages consisting of specific dates for Commissioner Clements, which had been omitted inadvertently from the initial production." *Id.* ¶¶ 15, 17–18.  The additional production for Clements' calendar resulted from further review that revealed "certain items were omitted due to an inadvertent production error" because, on days with many calendar entries, "some entries did not fit within the space allotted in the table." *Id.* ¶ 17. Similarly, for Glick, a further review revealed that the initial search performed by staff "failed to identify some meetings that took place in the date range specified" in the FOIA request, so "IT staff performed an additional search to capture responsive calendar entries that would have been omitted from the initial search." *Id.* ¶ 18.  Based on OGC and IT's sweep, both electronically and by conferral directly with the relevant Commissioners' offices, plus double-checking its productions to plaintiff, OEA confirmed that "the initial and subsequent production together capture all calendar entries within the requested date range." *Id.*[2]

### B.  Procedural History

On July 19, 2022, plaintiff filed the instant FOIA action seeking declaratory and injunctive relief against FERC, alleging that FERC inappropriately "with[held] responsive information in violation of Defendant's obligations" and requesting "immediate processing and release of agency

---

at 12 ("The average processing time for simple track requests for agencies that reported data in this field in their FY 2022 Annual FOIA Report was 40.8 days."), available at https://perma.cc/HK2K-4G29.

[2]      Plaintiff highlights that the redacted calendars "showed that in the months leading up to FERC's GHG guidance, at the White House's initiative[,] Mr. Glick began meeting every two weeks with a senior official (now director) of the White House Climate Policy Office," Pl.'s Mem. at 3, and repeats the critique lodged by a former FERC Chairman Neil Chatterjee about "FERC coordinating with the White House" being "a huge deal. Which is why they are slow walking the FOIAs," *id.* (quoting July 1, 2022 Tweet from Neil Chatterjee, Ex. F, Decl. of Pl.'s Counsel Supp. Mot. Summ. J. ("Pl.'s Counsel Decl."), ECF No. 11-9) (quotation marks omitted).  FERC effectively counters, however, that to the extent plaintiff's highlighting of Chairman Glick's bi-weekly meetings with White House personnel is intended to support an "assertion of improper withholding of information about interagency meetings," this assertion "rings hollow" because "FERC indeed disclosed such meetings in response to this particular FOIA request."  Def.'s Opp'n Pl.'s Mot. Summ. J. & Supp. Def.'s Cross-Mot. Summ. J. ("Def.'s Opp'n"), at 10 n. 3, ECF No. 15-1.

records responsive to Plaintiff's FOIA request."  Compl. ¶ 1, ECF No. 1.  After pleadings were joined, *see* FERC's Answer, ECF No. 6, the parties apprised the Court that they tried and failed to resolve their disputes over the production of responsive records to plaintiff's FOIA request, *see generally* Joint Status Reps., ECF Nos. 7, 10.  Consequently, the parties filed their pending cross-motions for summary judgment, pursuant to Federal Rule of Civil Procedure 56, *see* Pl.'s Mot.; Def.'s Cross-Mot., which motions are now ripe for review.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "[a] party is entitled to summary judgment only if there is no genuine issue of material fact and judgment in the movant's favor is proper as a matter of law." *Soundboard Ass'n v. Fed. Trade Comm'n*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) (quoting *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 805 (D.C. Cir. 2006)) (citation omitted); *see also* FED. R. CIV. P. 56(a).  In FOIA cases, "courts must grant summary judgment for an agency if its affidavit: (1) describes the justifications for nondisclosure with 'reasonably specific detail'; and (2) is not substantially called into question by contrary record evidence or evidence of agency bad faith." *Schaerr v. U.S. Dep't of Just.*, 69 F.4th 924, 929 (D.C. Cir. 2023) (quoting *Wolf v. C.I.A.*, 473 F.3d 370, 374 (D.C. Cir. 2007)).  Most FOIA cases "can be resolved on summary judgment." *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

"The fundamental principle animating FOIA is public access to government documents." *Waterman v. Internal Revenue Serv.*, 61 F.4th 152, 156 (D.C. Cir. 2023) (quoting *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999)) (citation omitted); *accord DiBacco v. U.S. Army* ("*DiBacco I*"), 795 F.3d 178, 183 (D.C. Cir. 2015).  Agencies are, therefore, statutorily mandated to "make . . . records promptly available to any person" who submits a request that "reasonably describes such records" and "is made in accordance with [the agency's] published

rules." 5 U.S.C. § 552(a)(3)(A).  "Congress, however, did not 'pursue transparency at all costs'[;] [r]ather, it recognized that 'legitimate governmental and private interests could be harmed by release of certain types of information.'"  *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.* ("*CREW II*"), 45 F.4th 963, 967 (D.C. Cir. 2022) (first quoting *Hall & Assocs. v. EPA*, 956 F.3d 621, 624 (D.C. Cir. 2020); and then quoting *AquAlliance v. U.S. Bureau of Reclamation*, 856 F.3d 101, 102 (D.C. Cir. 2017)).  To balance those competing interests, "FOIA exempts nine categories of documents from 'the government's otherwise broad duty of disclosure.'"  *Waterman*, 61 F.4th at 156 (quoting *AquAlliance*, 856 F.3d at 103).  "[T]hese limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act."  *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976).

FOIA authorizes federal courts "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B).  When an agency invokes an exemption to disclosure, district courts must "determine *de novo* whether non-disclosure was permissible."  *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 522 (D.C. Cir. 2015).  The statute "places the burden 'on the agency to sustain its action,' and the agency therefore bears the burden of proving that it has not 'improperly' withheld the requested records."  *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.* ("*CREW I*"), 922 F.3d 480, 487 (D.C. Cir. 2019) (first quoting 5 U.S.C. § 552(a)(4)(B); and then quoting *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989)).  This burden does not shift even when the requester files a cross-motion for summary judgment because the agency ultimately "bears the burden to establish the applicability of a claimed exemption to any records or portions of records it seeks to withhold," *Am. Immigr. Laws. Ass'n v. Exec. Off. for Immigr. Rev.*, 830 F.3d 667, 673 (D.C. Cir. 2016), while "[t]he burden upon the requester is merely

6

'to establish the absence of material factual issues before a summary disposition of the case could permissibly occur,'" *Pub. Citizen Health Rsch. Grp. v. U.S. Food & Drug Admin.*, 185 F.3d 898, 904–05 (D.C. Cir. 1999) (quoting *Nat'l Ass'n of Gov't Emps. v. Campbell*, 593 F.2d 1023, 1027 (D.C. Cir. 1978)).

The agency may sustain "this burden 'by submitting a *Vaughn* Index, along with affidavits from agency employees that describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Waterman*, 61 F.4th at 158 (quoting *Am. Immigr. Laws. Ass'n*, 830 F.3d at 673); *see also Poitras v. Dep't of Homeland Sec.*, 303 F. Supp. 3d 136, 150 (D.D.C. 2018) ("An agency may carry its burden of showing an exemption was properly invoked by submitting sufficiently detailed affidavits or declarations, a *Vaughn* Index of the withheld documents, or both, to demonstrate that the government has analyzed carefully any material withheld and provided sufficient information as to the applicability of an exemption to enable the adversary system to operate.").  "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Jud. Watch, Inc. v. U.S. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013) (per curiam) (quoting *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011)).

## III.   DISCUSSION

Plaintiff challenges the adequacy of FERC's search for responsive records, *see* Pl.'s Mem. at 8, 11–12, and "whether redactions and withholdings in the records [] the agency located and produced are lawful," *id.* at 8, initially only objecting to withholdings under Exemption 5, *see id.* at 12–15, but, in reply, adding a challenge to such withholdings under Exemption 6, *see* Pl.'s Reply Supp. Mot. Summ. J. ("Pl.'s Reply") at 10–12, ECF No. 17.  For the agency's part, FERC contends

that its search for materials responsive to the plaintiff's FOIA request was "reasonable and legally sufficient," Def.'s Opp'n to Pl.'s Mot. Summ. J. and Supp. Def.'s Cross-Mot. Summ. J. ("Def.'s Opp'n"), at 6, ECF No. 15-1, and that Exemptions 5 and 6 were properly applied to redact portions of the Commissioners' two calendars, *id.* at 6, 8, 11.  Plaintiff's challenges are addressed *seriatim* below.

### A. Sufficiency of FERC's Search

As a threshold issue, plaintiff challenges the sufficiency of the search for responsive documents, arguing that FERC's description of this search "fails to show that [FERC's] search was adequate."  Pl.'s Reply at 6.  Specifically, plaintiff claims that the OEA Declaration "uses too many words in disguising just how few assertions it makes regarding the search," *id.* at 7, and further contends that since OEA's director "appears to have no supervisory authority" over the staff that performed the searches, the director's description of the search is based on "hearsay" and therefore does not meet standards set out by Federal Rule of Civil Procedure 56, *id.* at 7–8.  These complaints amount to word-choice nit-picks and miss the mark because FERC has evinced a good-faith effort to search for records directly responsive to plaintiff's straight-forward FOIA request and, beyond bare speculation, plaintiff can identify no records that FERC failed to produce.

The law is well-settled that an agency moving for summary judgment in a FOIA case must demonstrate that an adequate search was conducted for documents responsive to the plaintiff's FOIA request.  *Morley v. C.I.A.*, 508 F.3d 1108, 1114 (D.C. Cir. 2007).  For a search to be adequate, the agency must show that "a good faith effort" was made "to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  The issue is "not whether there might exist any other documents possibly responsive to the request, but rather whether the

*search* for those documents was *adequate*."  *Weisberg v. Dep't of Just.*, 745 F.2d 1476 (D.C. Cir. 1984) (emphasis in original).

The OEA Declaration demonstrates that FERC "conducted a search reasonably calculated to uncover all relevant documents."  *Morley*, 508 F.3d at 1114 (citation omitted).  Although plaintiff correctly points out that Federal Rule of Civil Procedure 56 requires factual positions in briefing and declarations to be supported by admissible evidence in the record, *see* FED. R. CIV. P. 56(c)(4), in FOIA cases, "an agency declarant need not have been personally involved in the events reflected in, or preparation of, the records at issue but merely have personally been advised about or reviewed those records to meet the Rule 56 standard."  *Buzzfeed, Inc. v. FBI*, 613 F. Supp. 3d 453, 468 n.5 (D.D.C. 2020); *see also SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (finding that the agency affiant "in charge of coordinating the [agency's] search and recovery efforts . . . is the most appropriate person to provide a comprehensive affidavit" because an "agency employee responsible for supervising [the] search" may make such a declaration, even if in doing so he or she "necessarily relie[s] upon information provided by staff members who actually performed [the] search.").   Here, the OEA Director supervises and "oversees the processing of [FOIA] requests" and attests that the information relayed in her Declaration is "based on information provided to [her] by employees under [her] supervision," OEA Decl. ¶¶ 3–5, giving her the requisite personal knowledge to attest to the adequacy of FERC's search for records responsive to plaintiff's FOIA request.

Plaintiff alternatively challenges that FERC's search was inadequate by limiting the search only to "official" calendars, claiming that FERC failed to "explain why it believed that one 'official' calendar on one software platform was likely the only repository for responsive records particularly given Plaintiff's specific search parameters," Pl.'s Reply at 8, referring presumably to

plaintiff's broadly worded FOIA request as "search parameters" that could encompass any calendars maintained by the Commissioners, including for personal matters. This challenge is unpersuasive for two reasons.

First, plaintiff's focus on FERC's limitation of the search to "official" calendars of the Commissioners as a flaw in the search process is an overreach. As FERC accurately observes, the OEA Declaration's use of the word "official" "merely accounts for the possibility that the officials have personal calendars for tracking purely personal engagement[,]" and "[s]imply serving as a government official does not mean that every aspect of the official's personal life becomes subject to disclosure under FOIA." Def.'s Cross-Reply Further Supp. Cross-Mot. Summ. J. ("Def.'s Cross-Reply") at 3, ECF No. 19. Given that "Congress established FOIA to allow private persons to access government records and thereby be informed about 'what their government is up to[,]'" *Boyd v. Crim. Div. of U.S. Dep't of Just.*, 475 F.3d 381, 385 (D.C. Cir. 2007) (quoting *U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)), and that FOIA exempts "disclosures that would constitute an invasion of privacy," *Reps. Comm. for Freedom of Press*, 489 U.S. at 756, FOIA does not permit plaintiff to learn of the Commissioners' "personal engagements—whether to get a haircut, visit the dentist, have a meal with a relative, or any other personal encounter[,]" Def.'s Cross-Reply at 3; *see also infra* Section III.C.1 (upholding FERC's Exemption 6 redactions of purely personal information on the Commissioners' calendars).

Second, to the extent plaintiff criticizes the search methodology as too limited, this critique also fails. The OEA Declaration details a thorough search for all available calendars responsive to plaintiff's FOIA request. FERC's Information Technology ("IT") staff, who assisted in performing the search identifying the calendars ultimately produced, confirmed that "no other calendars exist." OEA Decl. ¶ 9. In addition, the OEA Director explained that "OGC confirmed

that only one official calendar is kept for" the Commissioners, confirming "this fact both during the initial processing of the request and again during the appeal process." *Id.* ¶ 16.  Finally, OEA's Director herself verified that "no other calendars [] would be responsive to the Plaintiff's request." *Id.*  Given that plaintiff has not pointed to "some identifiable deficiency in [FERC's] process, the agency's search efforts were sufficient to comply with its FOIA obligations."  *Pub. Invs. Arb. Bar Ass'n v. U.S. S.E.C.*, 930 F. Supp. 2d 55, 72 (D.D.C. 2013).

In sum, FERC has demonstrated that an adequate search for responsive records was conducted here.

## B.  FERC's Application of Exemption 5

FERC has redacted certain of the Commissioners' calendar entries, pursuant to Exemption 5's deliberative process privilege, arguing that the withheld titles and bodies of calendar entries "contain information about what would be discussed, deliberated, or considered at the meeting . . . satisfying the predecisional and deliberative elements of the deliberative process privilege." Def.'s Cross-Reply at 6; *see also* Def.'s Cross-Mem. at 8–10.  Plaintiff counters that FERC's explanations of the redactions presented in the *Vaughn* Index and OEA Declaration are so sparsely detailed that FERC has not sufficiently "identified [the matters pending before the Commission] or the decisionmaking authority of the deliberators." Pl.'s Reply at 9.  As to the latter criticism— regarding the deliberators' authority in the decision-making process—the responsive documents at issue are calendars of two FERC Commissioners and, as such, reflect matters engaging their attention, plus the attendees at meetings or in calls about those matters, making plain the identity of the persons participating in any matter under discussion.  Thus, this aspect of plaintiff's criticism is facile.  Yet, the dearth of any specific information about the redacted matters makes assessment of Exemption 5's applicability difficult.

As explained below, summary judgment as to FERC's deliberative process privilege claims is denied without prejudice because FERC has provided insufficiently detailed justifications for its invocation of the deliberative process privilege for calendar entries redacted pursuant to Exemption 5.

### 1. Legal Standard for Exemption 5's Deliberative Process Privilege

FOIA Exemption 5 excepts from disclosure "inter-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The purpose of Exemption 5 is to preserve "open and frank discussion" among government officials, *Dep't of Interior v. Klamath Water Users Protective Ass'n* ("*Klamath Water*"), 532 U.S. 1, 9 (2001), in order to "enhance the quality of agency decisions," *Hardy v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 243 F. Supp. 3d 155, 163 (D.D.C. 2017) (citing *Klamath Water*, 532 U.S. at 9). To qualify for Exemption 5 protection, a withholding must satisfy two requirements: (1) as a threshold matter, the disputed record must be "intra-agency or interagency," *Dow Jones & Co. v. Dep't of Just.*, 917 F.2d 571, 573 (D.C. Cir. 1990) (quoting 5 U.S.C. § 552(b)(5)), meaning that "its source must be a government agency," *Klamath Water*, 532 U.S. at 8; and (2) "it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it," *id.* at 8. The Supreme Court has made clear that "the first condition of Exemption 5 is no less important than the second." *Id.* at 9. Here, the parties do not dispute that the redacted calendar entries at issue serve the purpose of "inter-agency or intra-agency memorandums," meeting the first Exemption 5 requirement. *See generally* Pl.'s Mem.; Def.'s Opp'n at 7; OAE Decl. ¶ 21 ("[T]he inter-agency and/or intra-agency character of the portions [redacted under Exemption 5] is readily apparent on their face because the redactions cover information about internal meetings of FERC staff or meeting between FERC

staff and staff of other federal agencies.").  They contest only whether the Exemption 5 redacted calendar entries properly withhold information subject to the deliberative process privilege.

"To protect agencies from being 'forced to operate in a fishbowl,' the deliberative process privilege shields from disclosure 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'"  *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.* ("*Sierra Club*"), 141 S. Ct. 777, 785 (2021) (first quoting *EPA v. Mink*, 410 U.S. 73, 87 (1979); then quoting *NLRB v. Sears, Roebuck & Co.* ("*Sears*"), 421 U.S. 132, 150 (1975)).  The deliberative process privilege also "encourage[s] candor, which improves agency decisionmaking," by "blunt[ing] the chilling effect that accompanies the prospect of disclosure."  *Sierra Club*, 141 S. Ct. at 785; *see also Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020) (holding that the privilege aimed to "protect[] 'debate and candid consideration of alternatives within an agency,' thus improving agency decisionmaking") (quoting *Jordan v. U.S. Dep't of Just.*, 591 F.2d 753, 772 (D.C. Cir. 1978) (en banc)).

For the deliberative process privilege to apply, an agency bears the burden of showing "that withheld documents are 'both predecisional and deliberative.'"  *Waterman v. Internal Revenue Serv.*, 61 F.4th 152, 156 (D.C. Cir. 2023) (quoting *Sierra Club*, 141 S. Ct. at 788).  "Documents are 'predecisional' if they are 'generated before the adoption of an agency policy,' and 'deliberative' if they 'reflect[ ] the give-and-take of the consultative process.'"  *Jud. Watch, Inc. v. U.S. Dep't of Def.*, 847 F.3d 735, 739 (D.C. Cir. 2017) (alteration in original) (quoting *Pub. Citizen, Inc. v. Off. of Mgmt. & Budget*, 598 F.3d 865, 874 (D.C. Cir. 2010)).  Notably, "factual information generally must be disclosed, but materials embodying officials' opinions are ordinarily exempt" under the deliberative process privilege.  *Petroleum Info. Corp. v. U.S. Dep't*

*of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992); *accord Waterman*, 61 F.4th at 158.  The "key question" in evaluating material withheld under the deliberative process privilege is "whether disclosure of the information would 'discourage candid discussion within the agency.'"  *Access Reps. v. U.S. Dep't of Just.*, 926 F.2d 1192, 1195 (D.C. Cir. 1991) (quoting *Dudman Commc'ns Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1567–68 (D.C. Cir. 1987)).

### 2. FERC's Explanations for Its Exemption 5 Redactions Are Insufficiently Detailed

FERC describes three general and overlapping categories of the Exemption 5 redacted calendar entries: (1) a "numerous" number "reference policy proposals[,]" "some of [which] were never adopted[,]" OEA Decl. ¶ 23; (2) "the vast majority of entries are internal meetings involving only Commission staff and their efforts to resolve matters before the Commission," *id.* ¶ 25; and (3) "very few of the remaining items withheld pursuant to FOIA Exemption 5 are meetings with other Federal government agencies," *id.*  FERC elaborates that titles of "numerous" calendar entries reflecting policy proposals are withheld because they are pre-decisional and deliberative, and there is foreseeable harm in releasing them.  Def.'s Cross-Mem. at 8.  Specifically, FERC claims that the "discussions and other work referenced in the calendar entries reflect the deliberative nature of such conferrals and work, as the work was being conducted at the indicated times because a decision had not yet been reached concerning the subject matter."  *Id.* at 9; *see also* OEA Decl. ¶¶ 22–25 (explaining that policy proposals referenced in calendar entries are "inherently pre-decisional" and "deliberative" because they "were being conducted at the indicated times [since] a decision had not yet been reached concerning the matter," such that releasing the subject matter of the calendar entries "would reveal [FERC's] internal deliberations" and "could create public confusion that follows from disclosure of policies considered but ultimately not adopted").

Plaintiff challenges FERC's invocation of Exemption 5 as insufficient on two grounds. First, plaintiff points to the use of such vague numerical descriptions as "numerous," "vast majority," and "very few," to complain that this leaves unclear whether calendar entries referencing policy proposals, internal meetings, and meetings with other agencies encompass *all* the categories of records redacted pursuant to FOIA Exemption 5, or whether other categories of entries were also withheld pursuant to Exemption 5. Pl.'s Reply at 8–9. To be sure, the OAE Declaration could have been more artfully and precisely drafted, but, nonetheless, the OAE Director "reviewed the calendar entries that were withheld either in full or in part . . . pursuant to FOIA Exemption 5," referring to *all* such redactions, to conclude the withholdings were proper. OAE Decl. ¶ 25; *see also* Def.'s Cross-Reply at 5–6 (explaining that "[t]he titles and bodies of calendar entries, further, contain information about what would be discussed, deliberated, or considered at the meeting—as calendar entries often do[,]" referring to all calendar entries redacted pursuant to Exemption 5).[3]

Plaintiff's second challenge to the insufficiency of FERC's description of the redacted calendar entries has more traction, however. Specifically, plaintiff complains that FERC's Exemption 5 redactions are overbroad and insufficiently detailed, arguing that "FERC has not shown . . . that the deliberative process privilege applies to every word of every withholding of

---

[3]      FERC supplemented support for its withholdings with a *Vaughn* Index consisting of a single page listing "Doc. No." 1 through 4 to designate two versions of each Commissioner's calendar—spanning November 8, 2022, to April 19, 2022—with "Exemption" and "Justification" descriptions broadly described in conclusory terms by repeating generic language for each Exemption and Justification. *See Vaughn* Index. Put simply, the *Vaughn* Index is useless in this case. FERC correctly points out, *see* Def.'s Cross-Reply at 7, however, that whether an agency satisfies its burden for withholding under FOIA does not turn on the *Vaughn* Index alone but necessitates examining all the materials submitted by the agency. *See ACLU v. CIA*, 710 F.3d 422, 432–34 (D.C. Cir. 2003) ("[O]nce an agency acknowledges that it has some responsive documents, there are a variety of forms that subsequent filings in the district court may take."); *Gallant v. NLRB*, 26 F.3d 168, 172–73 (D.C. Cir. 1994) ("[T]he materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege.") (quotation marks and citation omitted)*; Khatchadourian v. Def. Intel. Agency*, 453 F. Supp. 3d 54, 74 (D.D.C. 2020) ("In reviewing the adequacy of an agency's justification, [however,] a court must 'focus on the functions of the *Vaughn* index, not the length of the document descriptions, as the touchstone of [its] analysis.'") (second alteration in original) (quoting *Jud. Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 146 (D.C. Cir. 2006)).

calendar information at issue" and that the agency "has not pointed to any agency 'decision' that was being contemplated or that was thereafter made, and it appears that in some cases no 'superior and subordinate' relationship can possibly have existed between the parties to the underlying calendar event."  Pl.'s Mem. at 14.

Plaintiff is right.  With respect to each redaction made pursuant to Exemption 5, the withholding agency must "pinpoint an agency decision or policy to which the document contributed."  *Hinckley v. United States*, 140 F.3d 277, 284 (D.C. Cir. 1998) (quotation marks omitted); *accord CREW II*, 45 F.4th at 972 ("Assessing whether a record is pre-decisional or deliberative necessarily requires identifying the decision (and the associated decisional process) to which the record pertains.").  Though "[t]he D.C. Circuit has recognized that an agency need not pinpoint an ultimate decision to which the document contributes to assert the privilege" because "[a]ny requirement of a specific decision after the creation of the document would defeat the purpose of the exemption," *Access Reps.*, 926 F.2d at 1126; *accord Sears*, 421 U.S. at 151 n.18, the agency withholding responsive records under the deliberative process privilege still "must show that the document was generated as part of a *definable* decision-making process" even where the ultimate agency decision is not identified, *100Reporters LLC v. U.S. Dep't of Just.*, 248 F. Supp. 3d 115, 151 (D.D.C. 2017) (emphasis in original) (quotation marks and citation omitted).  FERC has not made this requisite showing.  Rather, FERC has failed to provide any details or explanation as to why each (or any) of the policy proposals, internal meetings, and external meetings redacted from the calendar concern predecisional material or what sort of "*definable* decision-making process" the agency aims to protect.  *Id.* at 151 (emphasis in original).  Since FERC has only made generalized claims of deliberative process privilege as to the entirety of its

Exemption 5 redactions, the Court cannot assess whether any given redaction of a calendar entry is predecisional and deliberative, so summary judgment must be denied to both parties.

*American Oversight, Inc. v. USPS* ("*American Oversight-USPS*")—a case cited by neither party—is instructive here.  *See* No. CV 20-2580 (RC), 2021 WL 4355401 (D.D.C. Sept. 23, 2021). This case addressed the sufficiency of an agency's response to a FOIA request requesting "[a]ll calendars or calendar entries for [the USPS Postmaster General] Louis Dejoy including any calendars maintained on behalf of Louis DeJoy, from June 15, 2020 through two weeks after the date the search is conducted."  *Id.* at *1 (first alteration in original).  USPS responded by producing a "heavily redacted" calendar, representing "that the redacted information primarily concerns the meeting subject matter line and attendee information for each calendar entry" and arguing that the redacted entries were protected by Exemptions 3 and 5.  *Id.*  USPS sought to withhold some "general categories" of entries, pursuant to the deliberative process privilege because "[r]eleasing this information . . . would divulge information about the mechanics of the Postal Service's internal deliberations concerning operations, policies, and business strategies . . . [and] would also chill the Postmaster General's counselors and other subordinates from offering candid advice."  *Id.* at *7 (alterations in original).

Denying summary judgment to USPS, the court determined that USPS "failed to provide the required evidence to explain why each calendar entry at issue is covered by the privilege" by merely "provid[ing] only the most general descriptions of what these calendar entries could contain."  *Id.* at *8.  Given that USPS failed to "provide even a general description of the specific subject matter of each calendar entry at issue," that "[t]he content of these meetings—which would illuminate what deliberative process is implicated—[was] not provided[,]" and that "there [was no] attempt to explain how these calendar entries relate to the overarching deliberative process[,]"

the court found insufficient information was provided "about the nature of the particular deliberative process(es) that may have been involved in the redacted calendar entries." *Id.* at *9. Accordingly, USPS was directed "to either supplement its current declaration to correct these shortcomings and explain why Exemption 5 applies to each calendar entry, or alternatively . . . select to disclose the calendar entries withheld under this exemption." *Id.*

The instant case is almost indistinguishable from *American Oversight-USPS*. Just like USPS, FERC identifies general categories of redactions—policy proposals, internal meetings, and external meetings—and justifies those redactions with sweeping, non-specific claims that the "entries reflect the deliberative nature of such conferrals and work, as the work was being conducted at the indicated times because a decision had not yet been reached concerning the subject matter." Def.'s Cross-Mem. at 9. Consequently, just as in *American Oversight-USPS*, summary judgment must be denied because FERC has not explicated how each Exemption 5 redaction of the Commissioners' calendars is justified by the deliberative process privilege.

Citing *American Oversight, Inc. v. U.S. Department of Health & Human Services* ("*American Oversight-HHS*"), No. 17-CV-0827 (EGS/DAR), 2022 WL 1719001, at *18 (D.D.C. May 27, 2022), FERC counters that calendar entries that reference policy proposals and internal meetings are inherently deliberative and therefore this broad justification is sufficient to support invocation of Exemption 5, *see* Def.'s Mot. at 8. FERC's reliance on *American Oversight-HHS* is misplaced, however, because the record presented in that case was far more fulsome than the one FERC provides here. *American Oversight-HHS* explicitly found that calendar entries of agency officials may qualify as information subject to the deliberative process privilege, *see Am. Oversight-HHS*, 2022 WL 1719001, at *18 ("[A]s to . . . calendar entries, the Court is guided by precedent that the deliberative process privilege 'serves to protect the deliberative process itself,

18

not merely documents containing deliberative material.'") (quoting *Mapother v. Dep't of Just.*, 3 F.3d 1533, 1537 (D.C. Cir. 1993)), and, based on the defending agency's detailed declaration that identified each redacted calendar entry and justified that entry's redactions with particularity, *see* Def.'s Mot. Summ. J, Declaration of Michael Bell, Ex.6, *Am. Oversight-HHS*, No. 17-CV-0827 (EGS/DAR), 2022 WL 1719001, ECF No. 25-4, the court found a firm basis for holding that the agency had "plainly met its burden to establish that the talking points were deliberative" because the agency "grounded the briefing materials in its deliberative process," *Am. Oversight-HHS*, 2022 WL 1719001, at *18.  By contrast, in this case, plaintiff correctly points out that "[t]o the extent that FERC claims redactions 'reflect deliberations on matters pending before the Commission,' [FERC] has not identified those matters or the decisionmaking authority of the deliberators."  Pl.'s Reply at 9.  FERC has not explained, for example, why each redacted calendar entry is predecisional and deliberative by enabling the Court "to pinpoint an agency decision or policy to which these documents contributed," *Morley*, 508 F.3d at 1127, or to assess whether the agency's specific deliberative process at issue in each redacted calendar entry might be harmed by the release of these entries.  In short, a firm basis for assessing the Exemption 5 withholdings is missing on the record before this Court.

To be sure, justifying each redacted calendar entry across eighteen months of entries in a detailed and potentially lengthy *Vaughn* Index may be a time-consuming and even tedious task for FERC.  FERC cautions against demanding this level of detail to justify potentially hundreds of calendar redactions because this may discourage FERC staff from creating detailed calendar entries in order to avoid the types of burdensome FOIA requests initiated by plaintiff here.  *See* Def.'s Cross-Mem. at 9 (cautioning that agency officials may be disincentivized "to maintain detailed, substantive calendar entries that are necessary to enabling leaders at large, complex

organizations to prepare for and address the many discrete issues that they confront each day"); *accord* OEA Decl. ¶¶ 24.

Yet, under binding D.C. Circuit precedent, FERC must justify its redactions under the deliberative process privilege with respect to each redaction made—even if those redactions encompass hundreds of calendar entries.  That said, FERC may, but is not required to, justify its Exemption 5 withholdings on an entry-by-entry basis.  "[T]here is no fixed rule establishing what a *Vaughn* index must look like, and a district court has considerable latitude to determine its requisite form and detail in a particular case."  *ACLU*, 710 F.3d at 432.  Redacted entries may be categorized or grouped, so long as the relevant categories are sufficiently distinct and particularized to allow this Court to evaluate whether the claimed exemption is properly applied. *See Gallant*, 26 F.3d at 173; *see also Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Just.* ("*CREW III*"), 746 F.3d 1082, 1088–89 (D.C. Cir. 2014) ("Categorical treatment, however, may be used '[o]nly when the range of circumstances included in the category 'characteristically support[s] an inference' that the statutory requirements for exemption are satisfied.") (alteration in original) (quoting *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 893 (D.C. Cir. 1995)). When taking a categorical approach and grouping together like entries, however, FERC must provide "context or insight into the specific decision-making processes or deliberations at issue" within each set of calendar entries and how those deliberations or decision-making processes "in particular would be harmed by disclosure[,]" as opposed to "'nearly identical boilerplate statements' and 'generic and nebulous articulations of harm[.]'"  *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 106–07 (D.D.C. 2019) (Howell, C.J.) (quotation marks omitted) (quoting *Jud. Watch, Inc. v. U.S. Dep't of Just.*, No. CV 17-0832, 2019 WL 4644029, at *4–5 (D.D.C. Sept. 24, 2019)).

Accordingly, the parties' cross-motions with respect to FERC's Exemption 5 withholdings are denied without prejudice, and FERC must, in any renewed motion for summary judgment, "either supplement its current declaration to correct these shortcomings and explain why Exemption 5 applies to each calendar entry, or alternatively, . . . select to disclose the calendar entries withheld under this exemption." *Am. Oversight-USPS,* 2021 WL 4355401, at *9.

## C.   FERC's Application of Exemption 6

FERC invokes FOIA Exemption 6 to justify some redactions in the Commissioners' calendars produced in response to plaintiff's FOIA request, explaining that these redactions withhold "personal information (such as family member activities), passcodes, the contact information of private citizens, and the names of lower-level staff."  OEA Decl. ¶¶ 26–27.  As support for these redactions, FERC contends that withholding this information "prevent[s] foreseeable harm in that disclosure of this information could invite unwanted intrusions and result in an unwarranted invasion of personal privacy" for both the FERC Commissioners, in their private, unofficial capacities, and the lower-level staff.  *Id.*

For the reasons outlined below, FERC has sufficiently explained the privacy interests implicated by most categories of Exemption 6 redactions, while plaintiff has articulated no countervailing public interest in their disclosure.  Resultantly, FERC is entitled to summary judgment with respect to its Exemption 6 redactions, except as to "the names of lower-level staff."

### 1.  Legal Standard for FOIA Exemption 6

FOIA Exemption 6 excepts certain "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy" from the disclosure requirements outlined under the statute.  5 U.S.C. § 552(b)(6).  The exemption "seek[s] to protect the privacy of individuals identified in certain agency records," *ACLU v. U.S.*, 655 F.3d

1, 6 (D.C. Cir. 2011), by exempting "disclosures that would constitute an invasion of privacy," *Reps. Comm. for Freedom of Press*, 489 U.S. at 756 (quotation marks omitted).

This Circuit generally follows a "two-step process when considering withholdings or redactions under Exemption 6." *Am. Immigr. Laws. Ass'n*, 830 F.3d at 674–75. The first step involves a determination of whether the withheld or redacted material constitutes "personnel[, . . .] medical[ . . . ,] [or] similar files" as required under the statute. 5 U.S.C. § 552(b)(6). If the records at issue meet the first requirement, the second step is an inquiry into whether their disclosure "would constitute a clearly unwarranted invasion of personal privacy." *Id.*

At the second step, the focus is on "the significance of the privacy issues at stake." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 175 (1991). To assess the significance of the privacy concerns articulated by the withholding agency, the Court must "balance the public interest in disclosure against the interest Congress intended [Exemption 6] to protect[,]" *Dep't of Def. v. FLRA*, 510 U.S. 487, 495 (1994) (quotation marks omitted) (quoting *Reps. Comm. for Freedom of Press*, 489 U.S. at 776)—which requires a two-stage inquiry. *Am. Immigr. Laws. Ass'n*, 830 F.3d at 674. First, the court must determine that "disclosure 'would compromise a substantial, as opposed to a *de minimis*, privacy interest.'" *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229 (D.C. Cir. 2008) (quoting *NARFE*, 879 F.2d at 874). In this context, however, a "substantial privacy interest is anything greater than a *de minimis* privacy interest[.]" *Id.* at 1229–30. "If no significant privacy interest is implicated . . . FOIA demands disclosure," *NARFE*, 879 F.2d at 874, since FOIA's exemptions "are explicitly made exclusive and must be narrowly construed,'" *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011) (cleaned up), with the presumption in favor of disclosure.

Even if disclosure of requested records would implicate individuals' privacy interests, those privacy interests must still be weighed "against the public interest in the release of the

records." *NARFE*, 879 F.2d at 874.  The "public interest" at stake is "the extent to which disclosure would serve the 'core purpose of the FOIA,' which is to 'contribut[e] significantly to public understanding of the operations or activities of the government.'" *FLRA*, 510 U.S. at 495 (original formatting omitted) (quoting *Reps. Comm. for Freedom of Press*, 489 U.S. at 775); *see also Lepelletier v. Fed. Deposit Ins. Corp.*, 164 F.3d 37, 47 (D.C. Cir. 1999) ("[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'") (alterations in original) (quoting *FLRA*, 510 U.S. at 497).  Even where "a privacy interest may be substantial," it may still be "insufficient to overcome the public interest in disclosure." *Multi Ag Media LLC*, 515 F.3d at 1230.

### 2.  FERC Has Sufficiently Justified Most Exemption 6 Withholdings

Here, plaintiff does not contest that the information redacted from the calendars pursuant to Exemption 6—birthdays, children's activities, the contact information of private citizens the Commissioners have contacted, and the names of lower-level staff who attended meetings with the Commissioners, all of which appeared on the Commissioners' calendars—are "similar files," subject to Exemption 6. *See generally* Pl.'s Mem.  Thus, the dispute as to application of Exemption 6 boils down to whether releasing the records would amount to a clearly unwarranted invasion of privacy.

FERC contends that disclosure of the Exemption 6 redacted entries regarding "personal information (such as family member activities), passcodes, the contact information of private citizens, and the names of lower-level staff . . . could invite unwanted intrusions and result in an unwarranted invasion of personal privacy," OEA Decl. ¶ 27, and "could lead to their harassment" "because of things that [the Chairman or Commissioner] did while in office," Def.'s Cross-Reply

at 9–10.  According to FERC, disclosing information about the FERC Commissioners' personal relationships and staffing matters could create exactly the "palpable threat[s] to privacy" that FOIA aims to avoid.  Def.'s Mot. at 11 (quoting *Jud. Watch, Inc.*, 449 F.3d at 152).

FERC has sufficiently justified its Exemption 6 withholdings to protect from public disclosure personal information about Commissioners and their families and private contact information for non-governmental persons, whose names appear on the Commissioners' calendars. The private nature of Exemption 6 redactions of the contact information for private citizens, information related to family member activities and passcodes, is obvious, with concomitant obvious risks to privacy by disclosure and even breaches of telecommunications security as to the passcodes associated with call numbers.  *See Amiri v. Nat'l Sci. Found.*, Civ. A. No. 20-2006 (TNM), 2021 WL 4438910, at *13 (D.D.C. Sept. 28, 2021), *aff'd*, No. 21-5241, 2022 WL 1279740 (D.C. Cir. Apr. 28, 2022) ("[A] court may find the foreseeable-harm requirement satisfied if 'the very context and purpose of' the withheld material 'make[s] the foreseeability of harm manifest.'") (quoting *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 372 (D.C. Cir. 2021)); *Jud. Watch, Inc.*, 449 F.3d at 152 (explaining FOIA Exemption 6 precludes disclosure "bits of personal information, such as names and addresses, the release of which could create a palpable threat to privacy").  Moreover, revealing such private information does not further the purposes of FOIA to allow scrutiny of agency action.  *See Rose*, 425 U.S. at 372, 380–81 (noting that "the basic purpose of the Freedom of Information Act [is] 'to open agency action to the light of public scrutiny,'" in ruling that the names of U.S. Air Force Academy cadets accused of wrongdoing were irrelevant to the inquiry into whether the Air Force abided by its Honor Code and thus the names were not subject to disclosure under FOIA Exemption 6) (citation omitted); *FLRA*, 510 U.S. at 497 ("The only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of

the information sought would 'shed light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'");  *Reps. Comm. for Freedom of Press*, 489 U.S. at 774–75 (noting, in considering the application of Exemption 6, that "the FOIA's central purpose is to ensure that the Government's activities be opened to the sharp eye of public scrutiny[.]") (citation omitted).

For these reasons, Judges on this Court have upheld an agency's withholding of purely private information from public disclosure pursuant to Exemption 6.  *See, e.g.*, *Cornucopia Inst. v. U.S. Dep't of Agric.*, 282 F. Supp. 3d 150, 165 (D.D.C. 2017) (upholding the defendant's Exemption 6 redactions of "identifying information of private individuals" because plaintiff had not "identified a public interest sufficient to outweigh the privacy interest of the individuals"); *Surgey v. EPA*, Civ. A. No. 18-0654 (TJK), 2021 WL 5758880, at *6–7 (D.D.C. Dec. 3, 2021) (finding that details about an agency administrator's family vacation fell within Exemption 6); *Gov't Accountability Project v. Dep't of State*, 699 F. Supp. 2d 97, 105–06 (D.D.C. 2010) (holding that agency properly redacted personal email addresses of applicants for board positions); *WP Co. v. U.S. Small Bus. Admin.*, 575 F. Supp. 3d 114, 121 (D.D.C. 2021) (affirming withholding of social security numbers under Exemption 6, observing that "it is not difficult to note how people would be injured by the release of their SSNs").

Plaintiff objects that "FERC's declaration provides no information relating to the information it claims is exempt or why" and that "[t]he accompanying [*Vaughn*] Index again provides no substantive information."  Pl.'s Reply at 10.  Notwithstanding the brevity of FERC's explanations in the OAE Declaration and *Vaughn* Index for its Exemption 6 redactions of "personal information (such as family member activities), passcodes, [and] the contact information of private citizens," plaintiff's argument falls flat by prioritizing form over substance.  FERC has

identified these specific types of information withheld under Exemption 6 and further identified the privacy risk to the disclosure of the redacted information.  The Circuit has made clear that when "the FOIA litigation process threatens to reveal 'the very information the agency hopes to protect,' . . . it may be necessary for the agency affidavit to contain only 'brief or categorical descriptions' of the withheld information," with the agency justifying its withholding using a "category-of-document" method, *CREW III*, 746 F.3d at 1088  (quoting *ACLU*, 710 F.3d at 432), "so long as its definitions of relevant categories are sufficiently distinct to allow a court to determine whether the specific claimed exemptions are properly applied," *id.* (quotation marks omitted) (quoting *Gallant*, 26 F.3d at 173); *see also People for the Am. Way Found. v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 462 F. Supp. 2d 21, 30 n.5 (D.D.C. 2006) ("[A] *Vaughn* index is not required here, where it 'could cause the very harm that section 6 was intended to prevent.'") (quoting *Linder v. Nat'l Sec. Agency*, 94 F.3d 693, 697 (D.C. Cir. 1996)).  This categorical method is appropriately used here since, as already noted, Exemption 6 redacted information is simply not the type of information that sheds light on government action, which is what the FOIA is intended to facilitate.  *See Rose*, 425 U.S. at 372, 380–81.  In this regard, then, plaintiff has unsurprisingly made no effort to articulate any countervailing public interest in the disclosure of FERC's Exemption 6 redactions of family member activities, the contact information of private citizens, or passcodes.  *See* Pl.'s Reply at 10–12.  The Court therefore "need not linger over the balance; something outweighs nothing every time."  *Beck v. Dep't of Just.*, 997 F.2d 1489, 1494 (D.C. Cir. 1993) (quoting *NARFE*, 879 F.2d at 879).

FERC sweeps within its Exemption 6 withholding, however, "the names of lower-level FERC staff" that appear on the Commissioners' responsive calendars, but this category of withheld information is of a totally different type than the purely private information relating to family and

personal matters, contact information for private individuals and passcodes.  Plus, given that the names of these staffers appear on Commissioners' calendars—reflecting their involvement or inclusion in meetings or on calls with Commissioners—the reason for their denomination as "lower-level" by the agency is not obvious, and FERC makes no effort to describe which positions are considered "lower-level" or why these particular staffers are so designated.

FERC's categorical withholding of the names of so-called "lower-level staff" is simply not sufficiently defined or explained to allow evaluation of whether the withholdings are proper. FERC's blanket excuse of withholding the names of "lower-level staff" because "disclosure would not shed any light on the workings of [an agency]," Def.'s Mot. at 12 (quoting *Canaday v. U.S. Citizenship & Immigr. Servs.*, 545 F. Supp. 2d 113, 118 (D.D.C. 2008)), puts the cart-before-the-horse by failing to identify first the significant privacy interest at stake justifying withholding before turning to the next step of balancing that privacy interest against the public interest.  The privacy interests at stake with the names of lower-level FERC staff is not self-evident since "the disclosure of names and addresses is not inherently and always a significant threat to the privacy of those listed; whether it is a significant or a *de minimis* threat depends upon the characteristic(s) revealed by virtue of being on the particular list, and the consequences likely to ensue."  *Morley*, 508 F.3d at 1128 (quoting *NARFE*, 879 F.2d at 877).[4]

---

[4]    FERC relies on *Canaday v. U.S. Citizenship & Immigration Services*, but this case is both a non-binding district court decision and unpersuasive for the proposition urged by FERC that the names of federal agency employees are automatically excludable under Exemption 6 because such employees want simply to "maintain[] practical obscurity" and disclosure "would not shed any light on the workings of" the agency.  *See* 545 F. Supp. 2d at 118–19. A desire for "obscurity," standing alone, amounts to the type of a *de minimis* privacy interest insufficient to invoke Exemption 6.

In any event, the subject matter of the responsive records at issue in *Canaday* may, in fact, have prompted significant privacy concern for federal employees since the FOIA request sought "a disclosure of the identities of the immigration officials involved in the section 212 deliberations," and the "subject matter" of "section 212" concerned "the search for homosexuals[.]"  U.S. Citizenship and Immigration Services' ("USCIS") Declaration of Eric N. Banks ("Banks Decl.") ¶¶ 12–13, *Canaday*, No. 1:08-cv-00158-RMC (D.D.C. Apr. 8, 2008), ECF No. 8-2; *see also, e.g.*, *Vaughn* Index at 4, *Canaday*, No. 1:08-cv-00158-RMC (D.D.C. Apr. 18, 2008) (USCIS claiming that the identities of certain "[f]ederal employees" named in a "[m]emo dated Aug. 3, 1980, addressing excludability of gay attendees and waivers[,]" were exempt from disclosure under Exemption 6), ECF No. 11-1.  Section 212 of the Immigration and

Certainly, in circumstances where agency staff may be involved in or connected to controversial government decisions, particularly on issues associated with targeting for violence, harassment, or other security-related misconduct, withholding has been found appropriate. *See, e.g.*, *Jud. Watch, Inc.*, 449 F.3d at 152–53 (holding that Exemption 6 was properly used by the Federal Drug Administration ("FDA") to withhold names of agency personnel and private individuals and companies who worked on approval of mifepristone since, as to the privacy interest, the FDA "cited the danger of abortion-related violence to those who developed mifepristone, worked on its FDA approval, and continue to manufacture the drug . . . detail[ed] evidence of abortion clinic bombings[, and] . . . described websites that encourage readers to look for mifepristone's manufacturing locations and then kill or kidnap employees," when "[t]he opposing public interest in knowing these names and addresses is not immediately apparent"); *Ctr. for Med. Progress v. U.S. Dep't of Health & Hum. Servs.*, No. 21-cv-642 (BAH), 2023 WL 5007881, at *5, *7 (D.D.C. Aug. 7, 2023) (holding that Exemption 6 was properly used by the U.S. Department of Health and Human Services ("HHS") to withhold the identities of two National Institute of Health employees involved with a controversial grant providing funding for the collection and distribution of fetal stem cell tissue, because "releasing the names of individuals tied to the grant program and fetal tissue research . . . would subject those individuals to the real

---

Nationality Act ("INA") of 1952, 66 Stat. 182, 8 U.S.C. § 1182(a)(4), controversially provided that those "afflicted with psychopathic personality"—"a term of art intended to exclude homosexuals from entry into the United States"— were "excludable under § 212(a)(4)" of the INA. *Boutilier v. Immigr. & Naturalization Servs.*, 387 U.S. 118, 118–19 (1967). Given that disclosing the identities of federal employees associated with a decades-old policy of identifying and excluding "homosexuals" from entering the country could expose those employees to harassment, USCIS in *Canaday* at least showed *some* non-*de minimis* interest in maintaining the anonymity of those federal employees. By contrast, FERC has not similarly shown, for example, that the "lower-level employees" whose names were redacted from the Commissioners' calendar entries were similarly involved in a controversial policy such that the disclosure of their identities would result in any, let alone a significant, threat to their personal privacy. *See Morley*, 508 F.3d at 1128.

risk of threats, harassment, and violence[,]" so "the private interest in protecting the identity of the . . . [employees] outweigh[ed] the public interest" in their disclosure).

Likewise, the D.C. Circuit has upheld application of Exemption 6 to withhold federal agency employee names in response to FOIA requests seeking disclosure of those names in close association with financial information when disclosure would, for example, facilitate targeting of the employees for bothersome and unhelpful solicitations, and therefore amount to a substantial invasion of privacy that was not outweighed by any articulated countervailing public interest. *See, e.g.*, *Painting & Drywall Work Pres. Fund, Inc. v. Dep't of Hous. & Urban Dev.*, 936 F.2d 1300, 1301–03 (D.C. Cir. 1991) (holding that redactions, under Exemption 6, was proper of names, social security numbers, and home addresses of HUD employees on disclosed certified payroll records, explaining otherwise "the workers would experience a significant diminution in their expectations of privacy because that same information would also have to be provided, for example, to creditors, salesmen, and union organizers" and would "constitute a substantial invasion of privacy" that is not outweighed by "attenuated public interest in disclosure"); *NARFE*, 879 F.2d at 878 (upholding withholding under Exemption 6 upon finding privacy interests associated with the release of the names and addresses of former federal employees who received annuity payments was "significant," citing "little reason to doubt that the barrage of solicitations predicted will in fact arrive—in the mail, over the telephone, and at the front door of the listed annuitants"); *Niskanen Ctr. v. Fed. Energy Reg. Ctr.*, 20 F.4th 787, 792 (D.C. Cir. 2021) (upholding FERC's withholding of the names and addresses of property owners along the route of a proposed pipeline pursuant to Exemption 6 because releasing that information would increase "[their] risk of unwanted contact or solicitation"). On the record before the Court, FERC has made no effort to explicate what privacy interests "lower-level staff" have in withholding due to "the

consequences likely to ensue," *Morley*, 508 F.3d at 1128 (quoting *NARFE*, 879 F.2d at 877), let alone how such interest outweighs the public interest in revealing their names.

The only privacy justification FERC offers for withholding the identities of "lower-level staff" is its bald citation to several recent examples of federal judges facing threats or harm, such as Justice Brett Kavanaugh exiting a D.C. restaurant through the back door to avoid harassment from other restaurant patrons and the tragic murder of Judge Esther Salas's son at her own home. Def.'s Cross-Reply at 9–10. FERC fails to explain, however, how the targeting of federal judges has any relevance to the potential harm that FERC's unnamed "lower-level staff"—who operate in an entirely different branch of government with obligations largely unrelated to the federal judiciary's—would face. FERC's justification for withholding the names of "lower-level staff" thus plainly does not satisfy its burden under Exemption 6 of identifying these employees' particular "characteristics" that would prompt likely "consequences" warranting privacy protection. *See Morley*, 508 F.3d at 1128. Accordingly, FERC is entitled to summary judgment with respect to its Exemption 6 withholdings, except as to "the names of lower-level staff."[5]

## IV.  CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is denied without prejudice, and FERC's cross-motion for summary judgment is granted in part and denied in part,

---

[5]     The parties also dispute whether FERC has satisfied its obligations to produce the segregable portions of responsive records. *See* Pl.'s Mem. at 13 (arguing that FERC has not "made any effort to produce the segregable portions of responsive records"); *see also* Def.'s Cross-Mem. at 13 ("Here, where non-exempt information could be segregated from exempt information, FERC segregated and disclosed the non-exempt information from the calendar entries that were withheld in part."). FOIA requires agencies to make every effort to ensure that where exempt information is segregable from nonexempt information, the nonexempt information can be produced to the requester. *See* 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."); *see also Cause of Action Inst. v. U.S. Dep't of Veterans Affs.*, No. 20-CV-997, 2021 WL 1549668 (BAH), at *16 (D.D.C. April 20, 2021) ("[The production of such] segregable information is essential for agencies' FOIA compliance."). Since FERC will have to submit revised explanations for its claims of deliberative process privilege and its withholdings of names of "lower-staff" under Exemption 6, *see supra* Parts III.B.2, III.C.2, an evaluation of whether FERC has satisfied its segregation obligations will be reserved for any renewed cross-motions for summary judgment by the parties.

without prejudice.  Specifically, FERC is granted summary judgment with respect to conducting an adequate search, and with respect to its Exemption 6 withholdings of "personal information (such as family member activities), passcodes, [and] the contact information of private citizens," but summary judgment is otherwise denied, without prejudice.  Should FERC decide to continue to withhold responsive information under Exemption 5 and the names of "lower-level staff" under Exemption 6, the agency may renew its motion for summary judgment, supported by a supplemental declaration and/or *Vaughn* Index, prepared in accordance with this Memorandum Opinion, on a schedule to be proposed by the parties by October 3, 2023.

Date:  September 19, 2023

_____
**BERYL A. HOWELL**
United States District Judge